IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARCH INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) No. 16 C 514 |
| STONE MOUNTAIN ACCESS SYSTEMS, INC., et al, | ) Judge Virginia M. Kendall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arch Insurance Company issued a general liability insurance policy to Walsh Group, Ltd ("Walsh") during which Walsh Construction Company II, LLC ("Walsh II")—as the named insured under the policy—leased scaffolding equipment from Stone Mountain Access Systems, Inc. for a construction project at Loretto Hospital in Chicago, Illinois. Defendant Cameron Hansen, an employee of the Walsh II, filed suit against Stone for injuries he allegedly sustained after scaffolding equipment collapsed during construction. Arch initiated this action seeking a declaratory judgment that it owes no defense or indemnity to Stone in the underlying lawsuit involving Hansen. Arch moved for a judgment on the pleadings under Rule 12(c). The Court denies Arch's 12(c) motion for the reasons stated herein. (Dkt. No. 17.)

## BACKGROUND

Arch issued a general liability insurance policy effective from June 1, 2010, to June 1, 2011, to Walsh which named Walsh II as an insured ("the Policy"). (Dkt. No. 1 at ¶7.) The Policy contained the following section that detailed the scope of the coverage:

SECTION I – COVERAGES

1

> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. **Insuring Agreement**
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

*Id.* at ¶8. The Policy also included a section explaining how to add insured parties:

> **ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU**
> A. **Who Is An Insured (Section II)** is amended to include as an additional insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to the liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.
> A Person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.
> B. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.
> COVERAGE IS PRIMARY AND NON-CONTRIBUTORY WHEN REQUIRED BY WRITTEN CONTRACT OR AGREEMENT.

*Id.* at ¶9.

On November 9, 2010, Walsh entered into a written lease agreement with Stone for the use of scaffolding equipment at the Loretto Hospital construction site ("Lease"). *Id.* at ¶10. The Lease contained the following provision:

> 5. USE OF EQUIPMENT – USER – INSURANCE
>
> The Lessee/Purchaser shall, during the term of this Lease Agreement, provide and maintain at the Lessee/Purchaser's sole cost and expense, insurance covering the Equipment against all risks of loss or damage from every cause whatsoever for no less than the full replacement value thereof,

and shall carry comprehensive public liability and property damage insurance with contractual liability.

*Id.* at ¶11. On March 1, 2012, Hansen initiated a lawsuit against Stone and Loretto Hospital in the Circuit Court of Cook County, Illinois, seeking damages for bodily injuries he allegedly sustained on or about November 9, 2010 while working at the construction project site at Loretto Hospital when the scaffold allegedly collapsed. *Id.* at ¶12. On August 26, 2013, Colony Insurance Company, Stone's insurance carrier, tendered the Hansen lawsuit to Arch for its defense and indemnity. *Id.* at ¶14. Arch denied Stone's tender asserting that Stone does not qualify as an Additional Insured under the Policy because there was no written contract or agreement between Stone and Walsh adding Stone as an Additional Insured as required by the Policy. *Id.* Stone tendered the Hansen lawsuit to Arch for defense and indemnity a second time and Arch denied Stone's tender for the same reason. *Id.*

## **LEGAL STANDARD**

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay a trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Rule 12(c) permits a party to move for judgment on the pleadings after the complaint and answer have been filed by the parties." *Buchanan-Moore v County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing Fed. R. Civ. P. 12(c)). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the 12(b)(6) stage when a counterclaim has been

asserted the Court similarly accepts allegations in the counterclaim as true and draws all reasonable inferences in favor of the counterclaim plaintiff. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Although we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions." *Lodholtz*, 778 F.3d at 639.

## DISCUSSION

### I. Timing of 12(c) Motion

Stone answered the Complaint on February 19, 2016. (Dkt. No. 11.) Arch filed a motion for judgment on the pleadings on April 13. (Dkt. No. 17.) On April 26, the Court granted Stone's motion for leave to file a counterclaim that Stone subsequently filed on April 28. (Dkt. Nos. 24, 25). That same day Stone filed its response to Arch's 12(c) motion. (Dkt. No. 26.) Stone argues that Arch's 12(c) motion should be dismissed as premature because the pleadings are not closed as Arch had not yet filed a responsive pleading to the counterclaim. (Dkt. No. 26 at ¶13).

Rule 12(c) "permits a party to move for judgment on the pleadings after the complaint and answer have been filed by the parties." *Buchanan-Moore*, 570 F.3d at 827. "Unless the court orders a reply to an answer or third-party answer, the pleadings close after the last of the following pleadings in the case has been filed: answer, reply to a counterclaim, answer to a crossclaim, and third-party answer." 2–12 Moore's Federal Practice—Civil § 12.38. A 12(c) motion is premature if it is filed after the filing of a counterclaim and before a reply to the counterclaim. *See Flora v Home Federal Sav. & Loan Assoc.*, 685 F.2d 209, 211 n. 4 (7th Cir.

4

1982) ("When, in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply."); *see, e.g., ERA Franchise Sys., LLC v. Hoppens Realty, Inc.*, No. 12-cv-594-slc, 2013 WL 3967869 at *4 (W.D. Wis. July 31, 2013) (holding 12(c) motion was premature because it was filed after counterclaim and before reply to counterclaim); *Shield Tech. Corp. v. Paradigm Positioning, LLC*, 908 F.Supp.2d 914, 916-17 (N.D. Ill. 2012) (same). When Rule 12(c) motions are filed prematurely, the Court commonly treats the motion as a Rule 12(b)(6) motion. *See e.g., ERA Franchise Sys., LLC v. Hoppens Realty, Inc*., No. 12-cv-594-slc., 2013 WL 3967869, at *4 (W.D. Wis. July 31, 2013) (citing *Seber v. Unger*, 881 F. Supp. 323, 325 n.2 (N.D. Ill. 1995)); *Bitner v. Securitas Security Servs., USA, Inc.*, No. 10-CV-1255, 2011 WL 1100539, at *3 (C.D. Ill. March 3, 2011); *Jung v. Ass'n of Am. Med. Colleges*, 339 F.Supp.2d 26, 35 (D.D.C. 2004) (if a party files a 12(c) motion before its answer the court may treat it as a Rule 12(b)(6) motion to dismiss for failure to state a claim and no prejudice arises from the distinction).

In this case, the Court granted Stone leave to file a counterclaim after pleadings initially closed with Stone's filing of an answer and after Arch accordingly filed the 12(c) motion. In granting Stone leave to file a counterclaim, the Court did not strike the pending 12(c) motion based on the reopening of the pleadings with the filing of the counterclaim. In light of the fact that Arch did not file a response to Stone's counterclaim prior to Arch's 12(c) motion, the 12(c) motion is premature and the Court therefore addresses Arch's motion under the 12(b)(6) standard. *See id.* But whether the Court analyzes the motion under 12(c) or 12(b)(6) is a distinction without a difference as the Court applies the same standard to a 12(c) motion as a 12(b)(6) motion. *See Lodholtz*, 778 F.3d at 639; *Forseth v. Village of Sussex*, 199 F.3d 363, 368 n.6 (7th Cir. 2000); *Seber*, 881 F.Supp. 325 n.2 (citing *Thomason v. Nachtrieb*, 888 F.2d 1202,

1204 (7th Cir. 1989)). Moreover, considering that Stone filed a counterclaim, the Court may consider the allegations and attachments to Stone's counterclaim and accepts all well-pleaded facts in the counterclaim as true. *See Cozzi*, 250 F.3d at 574; *see, e.g., ERA*, 2013 WL 3967869 at *5 (finding 12(c) motion premature and therefore analyzing it under 12(b)(6), and subsequently considering counterclaim and its attachments).

## II. Judgment on the Pleadings is Inappropriate

Arch moves for judgment on the pleadings on the basis that the Policy does not cover Stone and any written agreement entered into by Stone and Walsh does not extend the Policy to add Stone under the Additional Insured provision of the Policy. In response, Stone argues that—as alleged in its counterclaim—there was a written agreement between Stone and Walsh that included a condition requiring Walsh to provide Stone "proof of general liability insurance naming it as additional insured, which Walsh understood and complied with by providing Stone Mountain with proof of such liability insurance with regular Certificates of Insurance for policy years beginning in 2008 through 2015, each naming Stone Mountain as additional insured." (Dkt. No. 26 at 6.) In support of this argument, Stone provided its request to Walsh for proof of insurance and a credit application, as well as Walsh's response to this request that includes Certificates of Liability Insurance. (Dkt. No. 25 at Ex. 4.) One certificate names Arch as the insurer and Walsh as the insured. *Id.* That certificate describes the insurance as "Commercial General Liability" and "Automobile Liability" insurance; the Policy defines its coverage as "Commercial General Liability" and covers a variety of automobiles. *Id.* at 8; (Dkt. No. 1, Ex. 1-1 at 5; Dkt. No. 1, Ex. 1-2 at 10.) Viewing these facts in the light most favorable to Stone as the non-moving party and drawing all inferences in Stone's favor, it appears this certificate refers to the Policy.

6

According to Arch, the documents attached to the counterclaim do not constitute a written agreement that designates Stone as an Additional Insured under the Policy. Arch highlights the following disclaimer in the Certificate that lists Arch as the insurer:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THE CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

(Dkt. No. 25, Ex. 4 at 8.) Arch relies on *Westfield Insurance Co. v. FCL Builders, Inc.*, 948 N.E.2d 115 (Ill. App. Ct. 2011) for the principle that a certificate of insurance does not confer rights on the certificate holder by qualifying the holder as an additional insured. But *Westfield* dealt with a motion for summary judgment whereas the motion before the Court is a motion for judgment on the pleadings when no discovery has occurred. *See* 948 N.E.2d 115. Even if the certificate describing the Policy does not extend coverage to Stone as an Additional Insured under *Westfield*, it is plausible that a written agreement exists that properly adds Stone as an Additional Insured under the Policy and Arch has presented no evidence establishing that no such written agreement exists. Accordingly, the Court denies Arch's motion for judgment on the pleadings. *See, e.g., Ryan Cos. US, Inc. v. Secura Ins. Co.*, No. 10 C 1035, 2011 WL 2940985, at *3 (N.D. Ill. July 21, 2011) (denying defendant's 12(c) motion alleging that plaintiff was not added as additional insured via a certificate of insurance because there was no evidence to the contrary).

## **CONCLUSION**

For the reasons stated herein, the Court denies Arch's motion for judgment on the pleadings. (Dkt. No. 17.)

/s/Virginia M. Kendall  
United States District Court Judge  
Northern District of Illinois

Date: 7/8/2016